FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 12, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KEELY J., <br><br>                               Plaintiff, <br><br>    v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                           Defendant. | NO: 1:17-CV-03083-FVS <br><br> ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 13 and 14. This matter was submitted for consideration without oral argument. The plaintiff is represented by Attorney D. James Tree. The defendant is represented by Special Assistant United States Attorney Leisa A. Wolf. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, the

ORDER ~ 1

court **GRANTS** Defendant's Motion for Summary Judgment, ECF No. 14, and

**DENIES** Plaintiff's Motion for Summary Judgment, ECF No. 13.

## JURISDICTION

Plaintiff Keely J. protectively filed for supplemental security income and disability insurance benefits on November 5, 2013. Tr. 270-83. Plaintiff alleged an onset date of May 5, 2008. Tr. 166, 173. Benefits were denied initially (Tr. 202-14) and upon reconsideration (Tr. 217-27). Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held before ALJ Mary Gallagher Dilley on September 1, 2015. Tr. 85-141. At the hearing, Plaintiff amended her alleged onset date to November 5, 2013, the date of her Title XVI application. Tr. 89. As noted by the ALJ, "[s]ince [Plaintiff's] insured status expired on June 30, 2008, [she] is not eligible for disability insurance benefits. Consequently, [Plaintiff's] request for a hearing to determine Title II eligibility will be dismissed." Tr. 20. Plaintiff was represented by counsel and testified at the hearing. *Id*. The ALJ denied benefits (Tr. 17-33) and the Appeals Council denied review. Tr. 1. The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and will therefore only the most pertinent facts are summarized here.

Plaintiff was 35 years old at the time of the hearing. Tr. 91. She has her high school diploma and attended community college. Tr. 93. She resides with her 13 year old daughter, who is with her part-time. Tr. 91, 120. Plaintiff has work history as a cook, sous chef, machine operator, and fountain server. Tr. 94-95, 135. She testified that she can no longer work as a cook because she cannot be in public or around people, and the job is too stressful. Tr. 96.

Plaintiff testified she "can't move at all" and is "almost bedridden at this point" due to back pain. Tr. 98-99. She lays down for five to six hours a day; gets two hours of sleep at night; cannot stand for more than 5 minutes; has "stroke migraines" at least every three months that leave her unable to see or speak; and her hands shake all the time and go numb. Tr. 99-103, 120. She testified that she has suffered from anxiety for her whole life, and has "bouts" of anxiety for months at a time which has impacted her "job history" because she cannot function in public or at home during that time. Tr. 104. Plaintiff testified that her most recent "flare-up" of anxiety has lasted for two and a half years. Tr. 104. She has seen the same doctor for 22 years, who prescribes medication, and she "refuse[s] to go to another doctor because [she feels] safe with [her] doctor." Tr. 105-107, 112-13.

She contends that when she sought out mental health treatment but the clinic turned her away and told her "they weren't equipped to help [her] with what's wrong." Tr. 105-106. Plaintiff testified that she panics about leaving the house, "so going to counseling would be almost futile because I'm be panicking so bad the entire time, I wouldn't be able to concentrate on what they're trying to help me with." Tr. 112. She had a boyfriend in 2014 that she met in her home; she rented out a room in her home to a man during the relevant adjudicatory period; and she was friends with a neighbor that she "used to take dinner all the time." Tr. 116-18. Plaintiff alleges disability due to high blood pressure, high cholesterol, pre diabetes, sleep problems, depression, anxiety, agoraphobia, panic attacks, and back. *See* Tr. 217.

At the hearing, Plaintiff's mother also testified that for about a year and half Plaintiff could hardly walk due to back pain; she sits down a lot but does not lay down because it "bothers her too much;" she doesn't really sleep; she does a little bit of cooking; and she leans on the counter to wash dishes. Tr. 125-27. Plaintiff's mother checks on her "often" and is there longest two days a week to "help if she needs some help." Tr. 127. She reported that Plaintiff has been going to the doctor since she was a little girl and has been give "all kinds of medicine" but "very, very seldom does it do anything to help." Tr. 131. Plaintiff's mother also testified that Plaintiff is "okay" as long a she is in her house, but "usually" has panic attacks if

she leaves her house that can leave her sweating, turning red, not speaking, and shaky. Tr. 131-32.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."

*Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate

nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that

it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

<h2 style="text-align:center">FIVE–STEP SEQUENTIAL EVALUATION PROCESS</h2>

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's

impairment must be "of such severity that she is not only unable to do his previous

work[,] but cannot, considering [his or her] age, education, and work experience,

engage in any other kind of substantial gainful work which exists in the national

economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§

404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner

considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f); 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1). If the claimant is not capable of adjusting to other

work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since November 5, 2013, the amended alleged onset date. Tr. 22. At step two, the ALJ found Plaintiff has the following severe impairments: lumbar degenerative disc disease; anxiety disorder; dysthymia; and personality disorder. Tr. 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 22. The ALJ then found that Plaintiff has the RFC

> to perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can stand and/or [walk] two to four hours. The claimant can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to hazards and vibrations. The claimant can perform simple, routine tasks. The claimant cannot have public contact. She can have superficial contact with coworkers.

Tr. 24.  At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work.  Tr. 27.  At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform.  Tr. 28.  On that basis,

the ALJ concluded that Plaintiff has not been under a disability, as defined in the

Social Security Act, from November 5, 2013, through the date of the decision.  Tr.

28.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

her supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 13.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ erred at step two;

3. Whether the ALJ properly considered Plaintiff's symptom claims; and

4. Whether the ALJ properly considered the lay witness evidence.

## DISCUSSION

**A. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."
*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001)(citations omitted).
Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009)(quotation and citation omitted). Plaintiff argues the ALJ erroneously considered the opinions of examining physician Mary Pellicer, M.D. ECF No. 13 at 14-17.

In March 2014, Dr. Mary Pellicer examined Plaintiff and assessed functional limitations. Tr. 363-70. Dr. Pellicer opined that, due to back pain, Plaintiff is able to stand and walk for 2-4 hours in an 8 hour day with more frequent breaks; sit for about 6 hours cumulatively in an 8 hour day with more frequent breaks; lift and

carry 10 pounds occasionally; has no manipulative restrictions; and cannot bend, squat, crawl, kneel or climb. Tr. 370. The ALJ granted Dr. Pellicer's opinion some weight. Tr. 27. Because Dr. Pellicer's opinion was contradicted by Dr. Dale Thuline, Tr. 195-96, the ALJ was required to provide specific and legitimate reasons for rejecting portions of Dr. Pellicer's opinion. *Bayliss*, 427 F.3d at 1216.

First, Plaintiff argues that the ALJ "gave no reason to not fully credit Dr. Pellicer's findings that [Plaintiff] could only occasionally lift and carry 10 lbs. with no mention of frequent upper extremity abilities." ECF No. 13 at 6-7. In support of this argument, Plaintiff cites the following testimony between the vocational expert ("VE") and Plaintiff's counsel at the hearing:

> VE: you said that they can only lift a maximum of 10 pounds. How much could they lift frequently?
>
> Plaintiff's Attorney: Not – there is none frequently. Just 10 pounds occasionally.
>
> VE: Okay. So no frequent use of the upper extremities for lifting activities at all?
>
> Plaintiff's Attorney: That's correct.
>
> VE: Okay. Then the jobs that I've identified would not exist. These jobs require frequent use of the upper extremities to hold small pieces of things or even if it's just a scoop that weighs less than a few ounces, they still have to be able to do that frequently. So the jobs I've identified and any other jobs in the nation at this simple, routine kind of work would not exist.

Tr. 139. Based on this testimony, Plaintiff contends that "Dr. Pellicer's fully

credited opinion would therefore compel a finding of disability." ECF No. 13 at 6.

However, Plaintiff's question to the VE mischaracterized Dr. Pellicer's opinion as

to Plaintiff's ability to lift frequently. Dr. Pellicer explicitly opined that Plaintiff

could lift and carry 10 pounds occasionally; however, at no point did Dr. Pellicer

offer any opinion as how much Plaintiff could lift or carry *frequently*. See Tr. 370.

Plaintiff does not cite any portion of Dr. Pellicer's evaluation that assesses how

much Plaintiff can lift and carry frequently; nor does Plaintiff cite any authority for

the proposition that the ALJ was required to consider a limitation not explicitly

opined by Dr. Pellicer. Thus, the Court is unable to find Dr. Pellicer's *lack* of

opinion as to Plaintiff's ability to lift and carry frequently was "significant,

probative" evidence that the ALJ was required to consider. ECF No. 13 at 7 (citing

*Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (ALJ may not reject

"significant probative evidence" without explanation)).

   Moreover, while not identified by Plaintiff, the Court notes that the second

hypothetical propounded to the VE by the ALJ presumed an individual who is able

"occasionally lift and carry 10 pounds and frequently lift and carry less than 10

pounds." Tr. 137. In response, the VE identified work the individual could

"competitively perform," including: assembler, bench assembler, and computer

assembler. Tr. 137. In her decision, the ALJ relied on the VE testimony to find at

step five that considering Plaintiff's age, education, experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: assembler, bench assembler, and computer assembler. Tr. 28. Thus, even assuming, *arguendo*, that the ALJ somehow improperly considered Dr. Pellicer's absence of opinion regarding Plaintiff's ability to frequently lift and carry; any error is harmless because the ALJ indicated that Plaintiff could "frequently lift and carry 10 pounds" in the properly supported hypothetical propounded to the VE. *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination"). For all of these reasons, the Court finds no error in the ALJ's consideration of the lifting and carrying limitations opined by Dr. Pellicer.

Second, Plaintiff contends that the reason given by the ALJ for granting only "some" weight to Dr. Pellicer's opinion was inadequate. ECF No. 13 at 7-9. Specifically, the ALJ gave "some weight to Dr. [Pellicer's] opinion but [she] note[d] that some of Dr. Pellicer's physical examinations findings were not consistent with other medical evidence, suggesting that [Plaintiff's] performance was self-limiting." Tr. 27. The ALJ may discredit a physician's opinion that is unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). In support of this finding, the ALJ specifically noted that Plaintiff reported positive straight leg raise

at 20 and 5 degrees on the left and right leg, respectively; "[h]owever, other examinations show [Plaintiff] with negative straight leg raise testing.  In addition, [Plaintiff] had decreased back range of motion but other findings have shown [Plaintiff] with unimpaired back movement."  Tr. 27, 368-69, 384-85, 388 (full range of motion in March 2014 and June 2014, respectively), 428, 436.  Plaintiff argues the ALJ's reasoning is not supported by substantial evidence, and cites evidence including: Plaintiff's complaints of back pain in February 2014; a September 2014 exam by Plaintiff's treating provider that found Plaintiff's range of motion was "moderately" limited in "all planes;" several findings of diminished or absent deep tendon reflexes; and MRI results from October 2014 indicating moderate degenerative changes at L5-S1 with diffuse bulging disk, mild facet arthritis "but no other significant abnormalities of spine identified;" and a "signal alteration in the SI joint suggesting a degree of arthritis on the left."  ECF No. 13 at 7-9 (citing Tr. 384, 387-88, 422-23, 440).  However, despite her argument to the contrary, the ALJ did consider the record as a whole, including the MRI results cited by Plaintiff; and the ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews*, 53 F.3d at 1039.  Thus, regardless of evidence that could be interpreted more favorably to Plaintiff, it was reasonable for the ALJ to find Dr. Pellicer's opinion was inconsistent with the overall medical evidence of record.  *See Burch*, 400 F.3d at 679 (where evidence is

susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a specific and legitimate reason for the ALJ to grant Dr. Pellicer's opinion only some weight.

**B. Step Two**

At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e., one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). To show a severe impairment, the claimant must first prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908. Here, Plaintiff argues the ALJ improperly failed to identify Plaintiff's migraines as a medically determinable impairment. ECF No. 13 at 12-13. However, the only evidence cited from the relevant adjudicatory period in support of this argument, was her self-report of "headache" during an emergency room visit in September 2014; and Plaintiff's testimony at the hearing that at least once every three months she has "stroke migraines" that render her blind and mute for an hour. Tr. 102-03, 426. Thus, the Court finds Plaintiff did not meet her burden to prove that migraines were a medically determinable impairment, because the evidence cited is entirely comprised of Plaintiff's own statements of symptoms.

*See* 20 C.F.R. §§ 404.1508, 416.908 (claimant's own statements alone will not suffice to prove the existence of an impairment).  Moreover, as noted by Defendant, even assuming the ALJ erred in not considering migraines at step two, any error is harmless because Plaintiff fails to identify any limitation associated with this impairment that was not included in the assessed RFC.  ECF No. 14 at 16-17 (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692, n.2 (9th Cir. 2009)); *Molina*, 674 F.3d at 1111 (an error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination").

**C. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of

the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however,

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" for several reasons.[1]  Tr. 25.

First, the ALJ found that despite Plaintiff's "allegations of significant mental health difficulties, she has not engaged in consistent mental health treatment, which limits the credibility of her allegations."  Tr. 26.  Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007).  However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."  Social Security Ruling ("SSR") 16-3p at *8-*9

---

[1] As noted by Plaintiff, "the ALJ made a selective recitation of some of [Plaintiff's] objective physical testing, but did not make any specific findings that [Plaintiff] was discredited for this or give any explanation for how she could be."  ECF No. 13 at 14 n.5 (citing Tr. 25-26).  The Court agrees, and declines to consider the listed evidence because the ALJ failed to make specific findings as to how the cited treatment notes discredit Plaintiff's physical symptom claims.  *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

(March 16, 2016), *available at* 2016 WL 1119029. In support of this finding, the ALJ noted that Plaintiff "testified that she did not engage in services with Compass Mental Health because the counselor told her they were not equipped to help her. However, this is a mischaracterization of why [Plaintiff] did not receive services. The counselor indicated that [Plaintiff] did not meet the Medicaid standards for access to care. Nor did [Plaintiff] present with any diagnosis risk factors to warrant mental health treatment." Tr. 26 (citing Tr. 112, 380-81). Plaintiff argues that her explanation for failing to pursue mental health services "demonstrated a fairly accurate reflection of the barriers she faced to treatment, even if she could not recall the exact wording several years later." ECF No. 13 at 15. This argument is unavailing. Plaintiff's explanation that she did not seek treatment because the counselor "said that they can't do anything for me" and is "not equipped" to treat her, is inconsistent with the counselor's treatment note that Plaintiff's diagnosis risk factors did not *warrant* mental health treatment. *See* 111-12, 380-81; see *Thomas,* 278 F.3d at 958–59 (ALJ may consider inconsistencies in Plaintiff's testimony or between his testimony and his conduct). Moreover, in further support of this reasoning, the ALJ cited (1) an examining physician's report in April 2014 that Plaintiff has had "no counseling" and "no history of mental health treatment prior to 2010;" and (2) the examiner's opinion Plaintiff's anxiety issues are "likely treatable with medication and psychotherapy" but Plaintiff "appears to be poorly

motivated to address her anxiety symptoms and engage in care."  Tr. 26, 372, 376;

see also *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (minimal objective

evidence is a factor which may be relied upon in discrediting a claimant's

testimony, although it may not be the only factor).  Plaintiff generally cites her

self-reports that she has been "going to the doctor since she was a little girl" and

"has been on multiple antidepressants."  ECF No. 13 at 14 (citing Tr. 131, 371).

However, based on the evidence cited above, the ALJ reasonably concluded that

given Plaintiff's allegations of significant mental health difficulties, and opinion

evidence indicating that Plaintiff's claimed mental health symptoms are

"treatable;" "one would expect [Plaintiff] to make better efforts to engage in

treatment."  Tr. 26.  Plaintiff's failure to seek treatment was a clear and convincing

reason, supported by substantial evidence, to discount her symptom claims.

Second, the ALJ noted that Plaintiff's mental status examinations "also do

not support the severity of [Plaintiff's] allegations."  Tr. 26.  An ALJ may not

discredit a claimant's pain testimony and deny benefits solely because the degree

of pain alleged is not supported by objective medical evidence.  *Rollins v.*

*Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341,

346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).

However, the medical evidence is a relevant factor in determining the severity of a

claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §

404.1529(c)(2).  Plaintiff argues the ALJ's "finding and brief recitation reveals relevant omissions of significant evidence," including mental status exam notes in the record that Plaintiff had flat affect and poor eye contact in March 2014; restricted range of affect and mildly dysphoric, but generally calm outwardly in April 2014; and "somewhat anxious" affect in December 2014.  ECF No. 13 at 15 (citing Tr. 367, 375, 384).  However, the ALJ set out, in detail, the mental status examination evidence contradicting Plaintiff's claims of disabling limitations.  Tr. 26.  For example, the ALJ noted that during the March 2014 examination, Plaintiff had a depressed mood, but recalled 3 out of 3 items after 5 minutes.  Tr. 367.  During a mental status examination in April 2014, Plaintiff made good eye contact; did not exhibit psychomotor agitation or retardation; thoughts were goal directed, linear and logical; affect was mildly dysphoric; she recalled 3 out of 3 items after 5 minutes; her fund of knowledge was intact; she was able to perform serial 7s; she followed a three step command without difficulty; she spelled "world" forward and backward; and her dysthymia did not appear to be severely impairing her.  Tr. 26 (citing Tr. 375-76).  In late 2014 Plaintiff reported "doing well;" in September 2014 her affect was reported as normal; and in April 2015 Plaintiff was noted to be talkative and mildly anxious.  Tr. 26 (citing Tr. 384-85, 428).  For all of these reasons, regardless of evidence that could be interpreted more favorably to the Plaintiff, the ALJ properly relied on evidence to support the finding that Plaintiff's

mental status examinations do not support the severity of her allegations. Tr. 26; *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *Burch*, 400 F.3d at 679 ("[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The lack of corroboration of Plaintiff's claimed mental limitations by the medical evidence, was a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

Third, the ALJ found Plaintiff "has daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Tr. 26. Plaintiff correctly notes that a claimant need not be utterly incapacitated in order to be eligible for benefits. ECF No. 13 at 16 (citing *Fair*, 885 F.2d at 603); *see also Orn*, 495 F.3d at 639 ("the mere fact that a plaintiff has carried on certain activities…does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating

impairment." *Molina*, 674 F.3d at 1113. Here, Plaintiff testified that she cannot be in public and cannot be around people; does not leave the house; no longer cooks; spends 5 to 6 hours a day lying down; cannot stand for more than a five minutes; has "bouts" of anxiety where she is unable to function in public and at home for months at a time; is dizzy almost all the time; and is "almost bedridden or couch ridden all the time." Tr. 96, 101, 104-05, 113, 116. However, as noted by the ALJ, in April 2014 Plaintiff reported that she "was independent with cleaning, bathing, cooking, laundry, dressing herself, and money management;" and is able to maintain attention through a TV show and movie. Tr. 26. Plaintiff argues that she "clarified she could only do these minimal activities at 5-minute intervals;" however, the record cited by Plaintiff is her self-report from a different evaluation in March 2014, and that examination also indicates that Plaintiff is able to care for her 11 year old child. ECF No. 13 at 16 (citing Tr. 366). Moreover, the ALJ notes that Plaintiff

> said she does not like being around people or going outside but she reported being good friends with her neighbor whom she sees daily and talks to daily. She also has a boyfriend whom she sees daily and sees her parents once a week…. She also testified that she was renting a room to someone, which is inconsistent with not wanting to be around people. [Plaintiff] said she does not go to the store but treatment notes show she does go to the store. Finally, [the ALJ noted] that [Plaintiff] is the primary caregiver for her young daughter, including preparing meals, performing personal care, and cleaning up her room.

Tr. 26 (citing Tr. 318-19, 366-67, 374, 435). Plaintiff argues that her 13 year old

daughter only lives with her part-time and "tries to help" with chores; the social

relationships cited by the ALJ are not "discrediting activities" because they were

discrete relationships and "by the time of the hearing, she primarily saw her mother

when her mother came to the house to visit her;" and "[t]here is no inherent

contradiction in [Plaintiff's] testimony as a person may occasionally shop while

still having trouble going out and avoiding it altogether during bouts where she did

not leave the house at all." ECF No. 13 at 16-17 (citing Tr. 101, 116-22).

However, regardless of Plaintiff's daughter living with her only "part-time,"

Plaintiff's ability to care for children without help during any period may

undermine claims of totally disabling symptoms. *See Rollins*, 261 F.3d at 857.

Moreover, regardless of evidence that could be considered more favorable to

Plaintiff, the daily activities outlined above were reasonably considered by the ALJ

as inconsistent with Plaintiff's complaints of *entirely* disabling limitations. *See*

*Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one

interpretation, the ALJ's conclusion must be upheld); *see also Andrews v. Shalala*,

53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining

credibility"). This was a clear and convincing reason to discredit Plaintiff's

symptom claims.

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**D. Lay Witness Testimony**

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993) ("friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his] condition."). To discount evidence from lay witnesses, an ALJ must give reasons "germane" to each witness. *Dodrill*, 12 F.3d at 919. Here, the ALJ accorded "little weight" to the testimony of Plaintiff's mother, Deborah Jones. Tr. 26-27. Plaintiff argues the ALJ reversibly erred by failing to fully credit her testimony. ECF No. 13 at 10-12. The Court disagrees. First, the ALJ noted that Ms. Jones testified she "has to go over to Plaintiff's house to help a lot but [Plaintiff] has reported being independent with cleaning, bathing, cooking, and doing laundry." Tr. 26-27, 127, 374. Inconsistency with a claimant's daily activities is a germane reason to reject lay witness testimony. *Carmickle*, 533 F. 3d at 1163-64; *Lewis*, 236 F.3d at 512. Plaintiff argues this reason "fails to accurately reflect the record," and cites Plaintiff's reports elsewhere in the record that she needs help doing dishes "sometimes;" attempts chores in 5-minute intervals; and is

able to see her mother because she is "helpful and supportive." ECF No. 13 at 10-11 (citing Tr. 319, 366-67). However, regardless of evidence that could be interpreted favorably to Plaintiff, the record cited by the ALJ included her own report that she was *independent* in daily living, including caring for her daughter, which the ALJ reasonably found was inconsistent with Ms. Jones' testimony that she has to help a lot. *See Burch*, 400 F.3d at 679. This was a germane reason to grant little weight to Ms. Jones' lay testimony.

Second, the ALJ noted Plaintiff's "back pain is not fully supported by the evidence as [Plaintiff] has regularly demonstrated full strength in the extremities and normal lumbar range of motion. [Ms. Jones] said [Plaintiff] has not had treatment because doctors prescribe medication that rarely did anything to help. However, [Plaintiff] reported several times that her medication was helping." Tr. 27, 124-25, 131. An ALJ may discount lay testimony if it conflicts with medical evidence. *Lewis*, 236 F.3d at 511 (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)). Plaintiff argues this finding was in error, and generally refers the Court to the same evidence cited in support of her unavailing argument regarding the inconsistency between Dr. Pellicer's opinion and the "other" medical evidence. ECF No. 13 at 11. However, as discussed *supra* with regard to Dr. Pellicer's opinion, it was reasonable for the ALJ to find that the severity of Ms. Jones' opinion was not supported by the overall medical record during which Plaintiff

"regularly demonstrated full strength in the extremities and normal lumbar range of motion."  Tr. 25-27, 369, 386, 388 (noting full range of motion in March 2014 and June 2014, respectively), 428, 436.  Finally, Plaintiff argues that any finding regarding improvement with medication was improperly considered in the context of Ms. Jones' testimony which was "speaking to [Plaintiff's longitudinal medical history and the mental health treatment [Plaintiff] had received since she was a little girl;" during which time, "many" medications were ineffective.  ECF No. 13 at 11.  However, Plaintiff fails to cite clinical or objective evidence to support this argument.  Moreover, regardless of whether any medications over the entire course of her treatment history were ineffective, it was reasonable for the ALJ to find that multiple reports by Plaintiff *during the relevant adjudicatory period* that her medication was helping (Tr. 371, 384), were inconsistent with Ms. Jones' general testimony that medication rarely helped her daughter.  For all of these reasons, the inconsistency of Ms. Jones' testimony with the medical evidence was a germane reason to grant her lay testimony little weight.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's.  *Tackett*, 180 F.3d at 1098.  To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence.  42 U.S.C. § 405(g).  As discussed in detail above, the ALJ properly weighed the

medical opinion evidence; did not err in considering Plaintiff's migraines at step

two; provided clear and convincing reasons to discount Plaintiff's symptom

testimony; and provided germane reasons to discount the lay testimony of

Plaintiff's mother. After review the court finds the ALJ's decision is supported by

substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

2. Defendant's Motion for Summary Judgment, ECF No. 14, is

   **GRANTED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE**

the file.

**DATED** September 12, 2018.

_s/Fred Van Sickle_
Fred Van Sickle
Senior United States District Judge